## MATTHEWS v. McLOUTH.

1. BOUNDARIES—BOUNDARY ACCEPTED FOR CENTURY SHOULD PREVAIL.

Where landowners were in doubt concerning the lines which separated their respective premises, and caused a survey to be made, and the map made therefrom was signed by all of them and recorded, and the boundary lines shown therein were not thereafter questioned for more than a century, they should be accepted as correct.[1]

2. SAME—EVIDENCE—SUFFICIENCY.

In a suit to quiet title to land, to enjoin a trespass, and for an accounting for sand and gravel removed, the issue being the boundary line between plaintiff's and defendant's lands, evidence *held*, to sustain the decree of the court below in favor of plaintiff.[2]

3. QUIETING TITLE—EQUITY—JURISDICTION—TITLE TO LAND.

Under 3 Comp. Laws 1915, § 12302, a chancery court is authorized to entertain jurisdiction of a suit to quiet title, enjoin a trespass, and for an accounting for sand and gravel removed, whether or not plaintiff is in possession of the land.[3]

Appeal from St. Clair; Tappan (Harvey), J. Submitted October 21, 1924. (Docket No. 119.) Decided October 27, 1925.

Bill by Chauncey W. Matthews against Sidney C. McLouth and others to quiet title to land, to enjoin a trespass, and for an accounting. From a decree for plaintiff, defendants appeal. Affirmed.

*Walsh & Walsh*, for plaintiff.

*John B. McIlwain*, for defendants.

[1]Boundaries, 9 C. J. § 182; [2]Id., 9 C. J. § 343; [3]Quieting Title, 32 Cyc. p. 1310.

BIRD, J. Plaintiff alleges in his bill that defendants are committing repeated trespasses on his land by removing sand and gravel therefrom under a claim of right. He seeks a decree which will quiet his title. He also seeks a permanent injunction to restrain the removing of sand and gravel, and an accounting for such sand and gravel as may have been wrongfully removed. The defendants' answer denies the several trespasses charged and claims title to the land in question. After a hearing the trial court granted the relief prayed by plaintiff and defendants have appealed.

The land which is in dispute is situated on the north end of Dickinson island, Clay township, St. Clair county, and is known as a part of St. Clair Flats. The premises in question were formerly the Cartwright tract or Cartwright island, and are situated on the north end of Dickinson island. It is the contention of plaintiff that the Cartwright tract started at a certain point in the Middle Channel marked by a post and ran thence north 74 degrees west to the waters on the opposite side of the island, called the "Sny Borau." Defendants contend that the post was situate 30 rods north of the point fixed by plaintiff, and ran in a northwesterly course and terminated on the North Channel. A map made from the McNeff survey introduced by plaintiff will help to show the respective contentions.

Plaintiff contends that his line extends from X to X, while the defendant insists that plaintiff's line extends only from A to B. The shore line west of A is the land in dispute. If the starting post on the Middle Channel is situate where plaintiff places it and the line is projected north 74 degrees west, the line would reach the Sny Borau channel, and plaintiff would have title to the entire north end of the island. On the other hand, if the starting post be 30 rods

north of the place fixed by plaintiff and runs thence north 74 degrees west, the line would terminate at the North Channel at the point marked A and plaintiff would own only about one-half of the north end of the island.    Both claim the record title and both claim title by adverse possession.    Plaintiff shows an unbroken record title through mesne conveyances from Cartwright.    Defendants show an unbroken record title

from the Dickinsons.  So the question resolves itself into one as to where the line is between the Cartwright tract and the Dickinson tract, or, in other words, whether the plaintiff owns the entire north end of the island or only about half of it.

It is unnecessary to examine the ancient titles except as they bear upon this question, as plaintiff concedes that Dickinson owned all of the island except the Cartwright tract, and defendants are in accord with the concession, but they disagree as to where the line is which separates them.

The McNeff survey made in 1817 describes the Cartwright tract as follows:

"Commencing on the most northeasterly point of said island, and running thence south sixteen (16) degrees, west twelve (12) acres (that is, twelve times the length of a side of a square acre) be the same more or less, to a post standing on the bank of Eagles (Middle) Channel, and near center of a marsh; thence north seventy-four (74) degrees west until it strikes the waters on the opposite side of the island, being the course of each division line, and forming the line between James Cartwright and John Brown, all the lands, to the northeast of said line assigned to James Cartwright, seignor."

Plaintiff's deed from Samuel Curtis Roby in 1889—

"conveys all of a certain tract or parcel of land situated, lying and being upon the head of Stromness island, township of Clay, containing by estimation about 250 acres, more or less, and bounded as follows: On the north by North Channel, on south by the lands belonging to A. C. Dickinson, and on the west by Turtle Channel, it being the same land conveyed to said Samuel C. Roby by Fidelia B. Kimball, as recorded August 13, 1872, and recorded 42 page 67, and quitclaim deed of John K. Randolph and wife to said Samuel C. Roby, and recorded in Liber 43 page 267, March 1, 1873."

Defendants received their conveyance from the Dickinsons.  The deed—

"conveys the island situated at the head of Lake St. Clair, bounded as follows: On the north by the Thompson farm, the Middle Channel, the North Channel and Lake St. Clair, on the east by the Middle Channel, the Thompson farm and Lake St. Clair, on the south by the Middle Channel and Lake St. Clair, and on the west by the North Channel and Lake St. Clair, or Anchor Bay or Baltimore Bay, being the whole island known as Dickinson or Stromness island, *except that part known as the Thompson farm.*"

The Thompson farm was conveyed to Cartwright.

Defendants claim that the starting post on the east or Middle Channel starts 30 rods north of the point plaintiff fixes it. If this be accepted and the line followed it will reach the North Channel at the point marked A on the map, and all the shore line west of the point belongs to defendants.

There is considerable proof bearing on this question because it is the crucial question. We have considered the evidence which bears on the respective contentions and we will speak of some of the more important ones which have influenced our conclusion.

In 1817 Dickinson island was owned by Cartwright, Brown, McDonald and Laughton. They were evidently at sea as to their partition lines. They employed a civil engineer by the name of McNeff to make a survey of the island and determine their respective portions. He did so, and the map appearing herein was made from it. After McNeff had prepared the survey all of the owners signed it and it was recorded in Wayne county, and no one appears to have taken issue with it until this controversy arose. McNeff found his starting point as follows:

"Commencing on the most northeasterly point of said island and running thence south sixteen (16) degrees west twelve (12) acres (that is twelve times the length of a side of a square acre) be the same more or less, to a post standing on the bank of Eagles (Middle) Channel and near center of a marsh."

By erosion some changes have taken place in the island and the post has disappeared, but Mr. Crocker, a civil engineer and surveyor, has recently relocated it for plaintiff from the McNeff survey. We are much impressed with the accuracy of this survey. When four men are in doubt concerning the lines which separate their respective premises and cause a survey to be made and when made they all sign it and it is not thereafter questioned for a century, we think it should command the respect of their grantees. The lines as established by this McNeff survey have not been questioned for over a century and it seems inconceivable that these lines would not have been attacked during that time if they had been incorrect.

But defendants say that the waters on the opposite side of the island referred to was Turtle Channel, and they show there was in former days a channel or swale following the line A-B to the North Channel which made the Cartwright tract an island. Defendants say this channel was Turtle Channel, and was the waters referred to. Plaintiff says the waters on the opposite side of the island referred to is the Sny Borau, and that there was a swale starting at the Middle Channel on the east extending in a westerly direction which split into two divisions, one extending in about the course of the line A-B to the North Channel and the other extending in a northwesterly direction to the Sny Borau, which was formerly called Turtle Channel. So it will be seen that the contention of plaintiff is that this swale made the whole north end of the island an island, which was called the Cartwright island. Defendants' contention that the swale extended to the North Channel would make the northeast portion of the island an island, but a smaller one. Thus it can readily be seen that this furnishes the basis for their respective contentions.

Judge Eldridge, who heard *State* v. *Dickinson,* in

the trial court (129 Mich. 221), made a finding as to these channels or swales, as follows:

"Between the island and this Roby's (Cartwright) Point a slough or swale extends from the Middle Channel, or near it, to the North Channel or to Sny Borau. This slough or swale, at a point some distance from the Middle Channel, is divided by a ridge, and one arm of the slough extends to the North Channel and the other to the Sny aforesaid."

The deeds in the Dickinson chain of title convey the entire island except the Cartwright tract at the northeast corner of the island. Counsel gives this language great weight. The language "in the northeast corner" is rather persuasive, but there is so much evidence that the Cartwright tract extended clear across the north end of the island that we hesitate to give this language the significance which it imports.

Asa Dickinson, who owned and occupied the premises more than a third of a century, in 1882, testified:

"It will be seen by sheets of description in the abstracts of title of the many conveyances of lands on the North Channel or northeast part of the island, that my northerly line running from the Middle Channel north 74 degrees west to the opposite side of the Sny Borau or Lake St. Clair is recognized as the line dividing those several parcels from the southwesterly portion of the island. In every instance that line is known and respected."

It is evident from this language that Asa Dickinson understood that the Cartwright tract extended clear across the north end of the island.

Again, the Cartwright tract was divided by him into six parcels and sold, and each parcel was bounded on the north by the North Channel. On the south they were each bounded by land of Peter Laughton which was afterwards deeded to Asa Dickinson. This is evidence that Cartwright understood that he owned

the whole north end of the island.    If he were mistaken about this it seems as though it would have been challenged by some of the parties in interest if it had not been correct.

Some of the deeds in evidence described the Cartwright line as extending to Turtle Channel.    Defendants insist that the line from A to B was called "Turtle Channel."    We have examined the evidence on this question and also the ancient maps, and we are convinced that this contention is not well founded.    The evidence convinces us that what is now called the "Sny Borau" was formerly called "Turtle Channel."

We are persuaded that the relocation of the starting post by Crocker in the Middle Channel is approximately correct.    If this be correct then the described line of "thence north 74 degrees west" would carry it to the Sny Borau on the west coast of the island in accordance with plaintiff's contention.

Defendants raise the question of jurisdiction of the court.    In plaintiff's amended bill he alleges he was in possession of the land in question.    The trial court has found that plaintiff was in possession and that defendants were not in possession.    But in any view of the matter, we think 3 Comp. Laws 1915, § 12302, would authorize a court of chancery to entertain jurisdiction of the proceeding.

The trial court found that the plaintiff had the record title to the premises in question, and also the right of title by adverse possession.    He filed an extended and able opinion in which he analyzes and discusses the testimony at length.    The testimony referred to, and many other bits of testimony not mentioned, lead us to concur in his views.

The decree of the trial court will be affirmed, with costs of this court to plaintiff.

McDONALD, C. J., and CLARK, SHARPE, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred.